UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JESSICA FERNANDES MORAES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:25-cv-00583-JAW |
| ) | |
| KEVIN JOYCE, et al., ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Finding the government's detention of a noncitizen violates due process, the court grants the noncitizen's petition for writ of habeas corpus and orders the government provide the noncitizen a bond hearing within fourteen days and release her pending the bond hearing subject to the release conditions from the government's July 2019 order of release on recognizance.

**I.  PROCEDURAL HISTORY**

On November 21, 2025, alleging her immigration detention violates federal law and the United States Constitution, Jessica Fernandes Moraes filed a petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against her removal from the District of Maine. *Pet. for Writ of Habeas Corpus* (ECF No. 1) (*Pet.*); *Emer. Mot. for TRO to Stop Transfer Without Prior Consent* (ECF No. 3) (*Emer. Mot.*). That same day, the Court issued a TRO enjoining Respondents[1] from removing Ms. Moraes from the District of Maine during the

---

[1] Kevin Joyce, in his official capacity as the Cumberland County sheriff; David Wesling, in his official capacity as the Acting Director of the Boston Field Office of ICE; Todd Lyons, in his official

pendency of her habeas proceedings, *Order on Mot. for TRO* (ECF No. 7), and ordered the Government to show cause why Ms. Moraes's petition should not be granted. *O.S.C.* (ECF No. 9). On November 26, 2025, Respondents filed their response, opposing Ms. Moraes's petition, *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 10) (*Resp'ts' Opp'n*), and Ms. Moraes filed her reply. *Pet'r's Reply to Resp'ts['] Opp'n to Writ of Habeas Corpus* (ECF No. 11) (*Pet'r's Reply*).

On December 1, 2025, the Court held a telephone conference of counsel. *Min. Entry* (ECF No. 13). The parties agreed there are no factual disputes for the Court to resolve in this matter and stipulated to the facts in Ms. Moraes's verified petition and its accompanying attachments. The parties also agreed to forgo either an evidentiary hearing or oral argument, allowing the Court to resolve this matter on the parties' briefing only.

## II.  THE FACTUAL RECORD[2]

Ms. Moraes is a Brazilian citizen who entered the United States without inspection on July 4, 2019. *Pet.* ¶ 1. Upon entry, the U.S. Department of Homeland Security (DHS) detained Ms. Moraes pursuant 8 U.S.C. § 1226 and released her on her own recognizance. *Id.* ¶ 2, Attachs. 1 (*Custody Determination*), 2 (*Order of Release*). That same day, DHS initiated removal proceedings against Ms. Moraes and issued a notice to appear. *Id.* ¶ 2, Attach. 3 (*Notice to Appear*).

---

capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of DHS; and Pamela Bondi, in her official capacity as Attorney General (collectively, Respondents). *Pet.* ¶¶ 27-31; *Emer. Mot.* 1-4.

[2]   For the purposes of Ms. Moraes's petition for writ of habeas corpus, upon agreement of the parties, the Court reviews the relevant facts as pleaded in her verified petition and accompanying attachments.

On or about November 17, 2025, upon release on her personal recognizance from Massachusetts custody for an alleged assault or assault and battery on a family or household member, U.S. Immigration and Customs Enforcement (ICE) apprehended Ms. Moraes and took her into custody. *Id.* ¶¶ 5-6. Ms. Moraes remains in ICE custody and is detained at the Cumberland County Jail in Portland, Maine. *Id.* ¶¶ 5-6. On November 21, 2025, she filed a petitioner for writ of habeas corpus, alleging her detention violates federal law and the United States Constitution. *Id.*

## III. THE PARTIES' POSITIONS

### A. Jessica Fernandes Moraes's Petition for Writ of Habeas Corpus

Ms. Moraes alleges her detention violates the Immigration Nationality Act (INA) and her due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 46-62. According to Ms. Moraes, because she "is not presently 'seeking admission' to the United States," she is improperly categorized as a mandatory detainee under 8 U.S.C. § 1225(b). *Id.* ¶¶ 7-11, 46-50. Instead, "as a person already present in the United States," she is subject to discretionary detention under 8 U.S.C. § 1226(a) and she is therefore entitled to a bond hearing before an Immigration Judge. *Id.* Pointing to recent Board of Immigration Appeals precedent she interprets as likely foreclosing her request for a bond hearing, Ms. Moraes anticipates being denied a bond hearing in violation of her Fifth Amendment due process rights. *Id.* ¶¶11-13, 51-62. She seeks, inter alia, a writ of habeas corpus ordering her immediate release during her habeas proceedings, or in the alternative, an order requiring an Immigration Judge to provide her a bond hearing as soon as

possible. *Id.* at 15-16. Should the Court grant her habeas relief, Ms. Moraes concedes she is subject to the terms and conditions of her July 4, 2019 order of release on recognizance. *Order of Release.*

### B.   Respondents' Opposition

In their opposition, Respondents maintain Ms. Moraes is properly categorized as a mandatory detainee under § 1225(b), as dictated by controlling agency precedent. *Resp'ts' Opp'n* at 1-2. However, Respondents acknowledge that "recent caselaw from this Court [has] uniformly sustain[ed] challenges to DHS's interpretation of § 1225." *Id.* at 1-2 (collecting cases).

### C.   Jessica Fernandes Moraes's Reply

Ms. Moraes's reply expands upon her statutory argument that she is properly categorized as a discretionary detainee entitled to a bond hearing under § 1226(a), rather than a mandatory detainee under § 1225(b). *Pet'r's Reply* at 1. Specifically, Ms. Moraes avers the plain language of the INA, its legislative history, and relevant caselaw all support her contention that § 1226(a), not § 1225(b), governs her detention during her removal proceedings. *Id.* at 2-11. She also restates her request that this Court issue a writ of habeas corpus ordering her immediate release pending her removal proceedings, or in the alternative, issue an order requiring an Immigration Judge to provide her a bond hearing as soon as possible. *Id.* at 11-12.

## IV.   DISCUSSION

### A.   Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Ms. Moraes's habeas petition.  "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)).  Furthermore, "[u]nder habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf." *Mahmoud Khalil v. Joyce*, No. 25-cv-01963 (MEF)(MAH), 2025 U.S. Dist. LEXIS 63573, at *7 (D.N.J. April 1, 2025); *accord Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948). Here, the Court retains jurisdiction over this matter, because Ms. Moraes filed her habeas petition when she was in custody in the District of Maine.

### B.   The Merits

Because § 1225(b)(2) requires mandatory detention and 8 U.S.C § 1226(a) entitles Ms. Moraes to a bond hearing with possibility of release pending the resolution of the immigration proceeding, it is dispositive to her habeas petition to determine which statute applies.  The question is whether § 1225(b)(2)'s provision for mandatory detention of noncitizens "seeking admission" applies to someone like Ms.

5

Moraes who has resided in the United States for more than two years. Consistent with the mass of recent caselaw addressing this question on similar facts, the Court concludes that § 1225(b)(2) is inapplicable to Ms. Moraes. Rather, having resided in the United States for approximately six years, Ms. Moraes is subject to discretionary detention under § 1226(a) and therefore is entitled to a bond hearing.

### 1.      **Statutory Framework**

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion). Relevant here is § 1225(b)(2).[3] Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Thus, § 1225(b)(2) creates a mandatory detention scheme. *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

---

[3]     Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expediated removal proceedings. *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Section 1226(a) thus "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 Dist. LEXIS 128085, at *4-5 (D. Mass. July 7, 2025). However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities. 8 U.S.C. § 1226(c)(1). None of those criminal activities is at issue here.

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8) (2025). If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk". *Hernandez-*

7

*Lara*, 10 F.4th at 41. An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA. 8 C.F.R. § 236.1(d)(3).

In *Jennings*, the Supreme Court provided guidance on the difference between the statutes, explaining that § 1225(b)(2) "authorizes the Government to detain certain aliens *seeking admission* into the country under," while § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.* at 288 (explaining that, "once inside the United States" a noncitizen "*present in the country* may still be removed" under "Section 1226") (emphasis supplied)).

### 2. Applicability of Section 1226(a)

Recent district court opinions in this District and elsewhere within the First Circuit have consistently rejected Respondents' argument that § 1225(b)'s mandatory detention provision applies to noncitizens, like Ms. Moraes, who have resided continuously in the United States for more than two years. *Chanaguano Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 195270 (D. Me. Oct. 2, 2025); *Chafla v. Scott*, No. 2:25-cv-00437-SDN, 2025 U.S. Dist. LEXIS 184909 (D. Me. Sep. 21, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-00326-LM-AJ, 2025 U.S. Dist. LEXIS 176165 (D.N.H. Sep. 8, 2025); *Chang Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 U.S. Dist. LEXIS 152874 (D. Me. Aug. 8, 2025); *Diaz Diaz v. Mattivelo*, No. 1:25-cv-12226-JEK, 2025 U.S. Dist. LEXIS 166667 (D. Mass. Aug. 27, 2025); *Martinez v. Hyde*, No. 25-11613-BEM, 2025 U.S. Dist. LEXIS 141724 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 U.S. Dist. LEXIS 128085 (D.

Mass. July 7, 2025); *Rodrigues De Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776 (D. Me. July 2, 2025). Indeed, district courts across the country have consistently rejected Respondents' interpretation. *See Chanaguano Caiza*, 2025 U.S. Dist. LEXIS 195270, at *7-8 (collecting cases); *Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases).

At bottom, the district courts consistently hold that § 1225(b)(2) applies only to those noncitizens who are actively "seeking admission," and a noncitizen continuously residing in the United States for more than two years cannot be considered actively seeking admission. *See, e.g.*, *Chafla*, 2025 U.S. Dist. LEXIS 184909, at *35. Rather, a noncitizen "already in the country pending the outcome of removal proceedings" is subject to discretionary detention under § 1226(a). *Jennings*, 583 U.S. at 289.

As Respondents concede, DHS initiated removal proceedings against Ms. Moraes under 8 U.S.C. § 1226(a) in July 2019. *Pet.* ¶ 2; *Order of Release*; *Notice to Appear*. Upon release on her personal recognizance in 2019, Ms. Moraes continued to reside in the United States until ICE took her into custody on November 17, 2025—more than six years later. Therefore, Ms. Moraes cannot be categorized under § 1225(b)(2) as actively seeking admission. Instead, as a noncitizen already in the

9

country, she is properly categorized under § 1226(a)'s discretionary detention scheme. Accordingly, Ms. Moraes is entitled to a bond hearing before an Immigration Judge. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

### 3. Due Process

Because Ms. Moraes is currently in the United States, she is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 U.S. Dist. LEXIS 175513, at *25 (D. Mass. Sep. 9, 2025), which provides that she will not be "deprived of life, liberty, or property, without due process of law." U.S. CONST. am. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). As the petitioner, however, Ms. Moraes bears the burden of demonstrating by a preponderance of the evidence that her detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira*, 2025 U.S. Dist. LEXIS 125776, at *8 (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).

To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Chafla*, 2025 U.S. Dist. LEXIS 184909, at *29 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao*, 2025 U.S. Dist. LEXIS 175513, at *26 (same); *Hernandez-*

*Lara*, 10 F.4th at 27-28 (same). Under *Matthews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a. Private Interest

In her petition, Ms. Moraes asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). A noncitizen subject detained under § 1226(a) vindicates their due process rights through a bond hearing before an Immigration Judge who requires the government either to (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by the preponderance of the evidence that they pose a flight risk in order to detain them throughout the pendency of their removal proceedings. *See Hernandez-Lara*, 10 F.4th at 41. In this case, Respondents have refused Ms. Moraes the bond hearing she is guaranteed under § 1226(a) and have failed to meet their burden for her continued detention as due process requires. Ms. Moraes has therefore clearly established that the first *Matthews* factor weighs in her favor.

### b. Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Matthews*, 424 U.S. at 335. The risk of erroneous deprivation is large where, as here, Respondents have made no showing that Ms. Moraes presents any public safety or flight risk. Accordingly, the second *Mathews* factor also weighs heavily in her favor.

### c. Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Respondents do not raise any governmental interest favoring Ms. Moraes's continued detention without a bond hearing. *See Chafla*, 2025 U.S. Dist. LEXIS 184909, at *34 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Matthews* factor weighs against Respondents and in favor of Ms. Moraes.

## V. CONCLUSION

Finding Respondents' continued detention of Ms. Moraes without a bond hearing violates federal law and the Fifth Amendment of the United States

Constitution, the Court GRANTS Jessica Fernandes Moraes's Petition for Writ of Habeas Corpus (ECF No. 1) and ORDERS Respondents to release her from detention subject to the conditions contained in her July 4, 2019 order of release on recognizance until she receives a bond hearing pursuant to 8 U.S.C. § 1226(a)(2).  The Court further enjoins Respondents from denying Ms. Moraes a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to her and ORDERS Respondents shall provide Ms. Moraes a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of this order.  Lastly, the Court ORDERS Respondents to file a status report within five days of Ms. Moraes's bond hearing, stating whether Ms. Moraes has been granted bond, and, if her request was denied, the reasons for that denial.

    SO ORDERED.

                                          /s/ John A. Woodcock, Jr.
                                          JOHN A. WOODCOCK, JR.
                                          UNITED STATES DISTRICT JUDGE

Dated this 2nd day of December, 2025